IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| DUSTIN JOSEPH DAVIS, et al. | |
| | : |
| | |
| v. | : Civil Action No. DKC 22-1760 |
| | |
| | : |
| RELIANCE TEST & TECHNOLOGY, LLC | |
| | : |

**MEMORANDUM OPINION**

This employment case arises from the quickly evolving and ever-changing efforts to address the COVID pandemic.  Currently pending is the partial motion to dismiss by Defendant Reliance Test & Technology, LLC.  (ECF No. 16).  The issues have been briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the partial motion to dismiss will be granted and Count I of the amended complaint will be dismissed.

## I.  Background

### A.  The Federal Contractor Vaccine Mandate

In September 2021, President Biden issued Executive Order 14042, titled "Ensuring Adequate COVID Safety Protocols for Federal Contractors."  Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 9, 2021).[1]  The order instructed federal agencies to

---

[1] Each executive branch document discussed in this section is publicly available and was cited in the Amended Complaint.  (ECF No. 12).

"ensure" "to the extent permitted by law" that each contract with a federal contractor would "include a clause" requiring the contractor to "comply with all guidance . . . published by the Safer Federal Workforce Task Force," "provided that the Director of the Office of Management and Budget . . . approves the Task Force Guidance." *Id.*

Soon after, that task force issued its first guidance document. *See* Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Sept. 24, 2021), https://perma.cc/F5LV-F7EA. The guidance stated that federal contractors "must ensure that all covered contractor employees are fully vaccinated for COVID-19, unless the employee is legally entitled to an accommodation." *Id.* at 5. The guidance explained that a contractor "may be required to provide an accommodation" to employees who decline vaccination "because of a disability" or "because of a sincerely held religious belief, practice, or observance." *Id.* at 5. Contractors thus "should review and consider what, if any, accommodation[s] [they] must offer." *Id.* at 5.

At the end of the guidance document, the task force provided a list of answers to "Frequently Asked Questions." *Id.* at 9-14. One question asked, "Who is responsible for determining if a covered contractor employee must be provided an accommodation because of a disability or because of a sincerely held religious

belief, practice, or observance?" *Id.* at 9.  The answer stated in part:

> The contractor is responsible for considering, and dispositioning, such requests for accommodations regardless of the covered contractor employee's place of performance. If the agency that is the party to the covered contract is a "joint employer" for purposes of compliance with the Rehabilitation Act and Title VII of the Civil Rights Act, both the agency and the covered contractor should review and consider what, if any, accommodation they must offer.

*Id.* at 10.  Finally, the guidance stated that contractor employees "must be fully vaccinated no later than December 8, 2021." *Id.* at 5.  The Director of the Office of Management and Budget reviewed the guidance and approved it.  86 Fed. Reg. 53,691 (Sept. 28, 2021).

On November 10, 2021, the task force issued an updated guidance document. *See* Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Nov. 10, 2021), https://perma.cc/BSW7-7XHU.  The updated guidance pushed back the vaccination deadline from December 8, 2021, to January 18, 2022. *Id.* at 5.  It also removed the "Frequently Asked Questions" section from the end of the document and instead provided a link to a website at which the same answers could be found. *Id.* at 9.[2]  The updated guidance

---

[2]   The amended complaint provides a permanent link to that webpage which was captured on January 21, 2022.  (ECF No. 12, at

otherwise did not change any language regarding religious accommodations—for instance, just like the prior guidance, it stated that a contractor "may be required" to provide a religious accommodation, and that a contractor "should review and consider what, if any, accommodation it must offer." *Id.* at 5. Soon after, the Director of the Office of Management and Budget approved the updated guidance and "rescind[ed]" approval for the prior guidance. 86 Fed. Reg. 63,418 (Nov. 16, 2021).

On December 7, 2021, a federal court enjoined Executive Order 14042 and barred the government from "enforcing the vaccine mandate for federal contractors . . . in any state or territory of the United States of America." *Georgia v. Biden*, 574 F.Supp.3d 1337, 1357 (S.D.Ga. 2021). That nationwide injunction remained in effect for almost one year, until the United States Court of Appeals for the Eleventh Circuit narrowed the injunction so that it only applied to the plaintiffs involved in that particular case. *See Georgia v. President of the United States*, 46 F.4th 1283, 1308 (11th Cir. 2022). In response to the Eleventh Circuit's opinion, the Office of Management and Budget issued "interim guidance" in which it stated that "[d]espite the lifting of the nationwide bar

---

8). The linked webpage provides the same answer regarding religious accommodations as was originally listed in the September 2021 guidance. *See* Safer Federal Workforce Task Force, FAQs, Federal Contractors, Vaccination and Safety Protocols, https://perma.cc/4RMQ-7RSG.

to enforcement" of the executive order, federal agencies "should NOT: (1) take any steps to require covered contractors and subcontractors to come into compliance with previously issued Task Force guidance; or (2) enforce any contract clauses implementing Executive Order 14042."  (ECF No. 12, at 10 (quoting Office of Management and Budget, OMB Guidance for Agencies_EO 14042_20221019 (Oct. 19, 2022), https://perma.cc/GBN4-G8VU)).

### B.  Case Background

Defendant Reliance Test & Technology is a federal contractor. (ECF No. 12, at 2).  In September 2020, the U.S. Navy contracted with Defendant to perform a project that involved "Atlantic Range Technical Support Services for the Naval Air Warfare Center Aircraft Division."  (ECF No. 12, at 3).  Plaintiffs Dustin Joseph Davis, Stephen Gatton, Buddy McBride, and Shane Washington were Defendant's employees.  (ECF No. 12, at 1-3).  Starting in 2021, each Plaintiff performed work on Defendant's project with the Navy. (ECF No. 12, at 3).  As part of that project, Plaintiffs worked at a secure Naval Airbase and the Navy "controlled whether Plaintiffs could enter the base, the building they worked in, and the [work] they were assigned."  (ECF No. 12, at 3).

Plaintiffs feel that "receiving a [COVID]-19 vaccine would violate" their religious beliefs.  (ECF No. 12, at 4).  After the executive order and task force guidance were issued (but before their enforcement was enjoined), "[e]ach Plaintiff made a request

for a religious accommodation." (ECF No. 12, at 8).  The amended complaint is unclear, however, about how formal each Plaintiff's request was.  It states that three Plaintiffs—Mr. Davis, Mr. McBride, and Mr. Gatton—were "told there would be no religious accommodations granted." (ECF No. 12, at 8).  They thus did not make a "written request" because they were "told" it "would waste paper." (ECF No. 12, at 8).  The amended complaint does not specify who made these alleged statements.  Meanwhile, the fourth Plaintiff—Mr. Washington—proceeded with a formal accommodation request. (ECF No. 12, at 8).  He later received an email from Defendant's human resources department that "notified [him] that the accommodation was granted" and "explained that if [his] work location  .  .  .  began implementing EO 14042 that further accommodations/exemptions would require government approval." (ECF No. 12, at 8).

On December 16, 2021—nine days after the nationwide injunction was issued—Plaintiffs received a "companywide email" from a "General Operations Manager" for the project on which they worked. (ECF No. 12, at 9).  The email stated that the workplace vaccination deadline had been pushed back from January 18, 2022— the date required by the task force guidance—to "an unknown date." (ECF No. 12, at 9).  Plaintiffs then continued to work on the project for several months while remaining unvaccinated. (ECF No. 12, at 9-10).

Later, in May 2022, Defendant began to "follow[] the policy issued by ARTNOTE 2022-1 Revision 3, dated May 1, 2022." (ECF No. 12, at 9-10). That policy required that the project's "crew and mission support staff be [COVID]-19 vaccinated." (ECF No. 12, at 10). On May 23, "Plaintiffs were notified . . . that failure to comply with ARTNOTE 2022-1 Revision 3, dated May 1, 2022, would result in termination effective May 30." (ECF No. 12, at 10). The amended complaint does not state who provided this notice. Plaintiffs were fired soon after. (ECF No. 12, at 10). As of July 2022—several months after Plaintiffs were fired—the executive order remained enjoined and "there was no sign that the executive branch would require implementation of the vaccination requirement." (ECF No. 12, at 9).

In response to their terminations, Plaintiffs sued Defendant. (ECF No. 1). The original complaint raised only a claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (ECF No. 1, at 11-13). Defendant moved to dismiss, (ECF No. 5), Plaintiffs responded, (ECF No. 7), and Defendant replied, (ECF No. 8). Plaintiffs then moved for leave to amend the complaint. (ECF No. 9). The court granted that motion and denied the first motion to dismiss as moot. (ECF No. 11). Plaintiffs filed an amended complaint that maintained the RFRA claim and added a claim under Title VII, 42 U.S.C. § 2000e, *et seq.* (ECF No. 12, at 11-15). Defendant filed a partial motion to dismiss in which it

7

argued that the RFRA claim should be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6). (ECF No. 16). Plaintiffs responded, (ECF No. 22), and Defendant replied, (ECF No. 23).

## II.  Standard of Review

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept as true a complaint's well-pleaded allegations, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). A court need not, however, accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), or conclusory factual allegations devoid of any reference to actual events, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). To state a plausible claim and survive a Rule 12(b)(6) motion, a Plaintiff must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. Analysis

Defendant argues that the RFRA claim should be dismissed because RFRA generally applies to the government, and Defendant is a private company. (ECF No. 16-2, at 8). Analogizing to the "state actor" doctrine under which private parties may sometimes

be liable for federal constitutional violations, *see, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019), Defendant argues that RFRA can apply to a private company only if that company "is shown to be acting as a 'state actor.'" (ECF No. 16-2, at 8). Defendant asserts that it could not have been a state actor for the purposes of Plaintiffs' firings because: (1) Defendant—not the government—"made the decision to deny Plaintiff's [religious] accommodation requests," and (2) at the time of Plaintiffs' firing, the federal government was enjoined from enforcing the federal contractor vaccine mandate. (ECF No. 16-2, at 9-10).

Plaintiffs argue that the executive order and task force guidance caused the Defendant to sign a contract with the government that "required" Defendant to "have [its] workforce fully vaccinated." (ECF No. 22, at 5). Plaintiffs also note that, according to the "Frequently Asked Questions" section of the task force guidance, if a federal agency is a "joint employer" for the purposes of certain other civil rights statutes, then "both the agency and the covered contractor should review and consider what, if any, accommodation they must offer." (ECF No. 22, at 4 (quoting Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Sept. 24, 2021), https://perma.cc/F5LV-F7EA)). Plaintiffs then argue that they were in fact jointly employed by the Navy and that the Navy

thus had a meaningful role in deciding whether Plaintiffs should have been fired for declining vaccination.  (ECF No. 22, at 8 ("[T]he Department of Navy . . . had the ability to prevent continued employment at times.  Not being vaccinated against [COVID]-19 is one such circumstance.")).

At its core, Plaintiffs' theory seems to be that Defendant can be liable under RFRA if Plaintiffs' firings were "attributable to" government action.  (ECF No. 12, at 12 ("Federal contractors can be found to be acting under the color of law when the conduct can be attributable to the government.")).  RFRA creates a cause of action against the "[g]overnment," and the statute defines that term to include a "person acting under color of law."  42 U.S.C. §§ 200bb-1(a); 2000bb-2(1).  Interpreting that language, several federal courts have held that a private defendant may in limited circumstances be liable under RFRA; those courts have applied variations of the "attributable to" standard that Plaintiffs propose.[3]  The amended complaint in this case is insufficient because it does not contain allegations to support a plausible

_____

[3] *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (holding that the "ultimate issue" in deciding whether a private defendant can be sued under RFRA is whether "the alleged infringement of federal rights" is "fairly attributable to the government") (cleaned up); *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015) (holding that RFRA may apply to a private defendant when there is "such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself") (cleaned up).

inference that Plaintiffs' firings were at all attributable to government action.

Initially, while Plaintiffs rely on the executive order and task force guidance, the amended complaint makes clear that Plaintiffs were not fired under those policies.  Indeed, Plaintiffs concede that when they were fired, the executive order had been enjoined for more than five months.  (ECF No. 12, at 9).  Soon after that injunction issued, the vaccination deadline in Plaintiffs' workplace was pushed back to "an unknown date," and Plaintiffs spent the next several months working for Defendant while remaining unvaccinated without any issue.  (ECF No. 12, at 9-10).  Plaintiffs do not allege that Defendant raised the executive order or task force guidance as reasons for termination at any time after the injunction took effect.

Plaintiffs' primary response is that Defendant "signed a contract with the government that required Defendant to have all employees vaccinated."  (ECF No. 22, at 4-5).  If Plaintiffs mean to argue that RFRA should apply to Defendant because Defendant's naval contract required it to follow the vaccine mandate implemented through the task force guidance and the executive order, then this argument is unpersuasive for two reasons.  First, the guidance expressly states that contractors may be required to *grant* religious accommodations, so a contract requiring adherence to the guidance would not by itself compel Defendant to *deny* the

alleged accommodation requests.  Second, and more fundamentally, at the time Plaintiffs were fired, the government was enjoined from doing anything to enforce any contract clause that implemented the "vaccine mandate for federal contractors."  *See Biden*, 574 F.Supp.3d at 1357.  Plaintiffs do not allege that the government ignored or violated this injunction; thus, Plaintiffs' terminations could not have been caused by the government acting to enforce any such clause in its contract with Defendant.

The amended complaint seems to allege that Plaintiffs were fired not because of the executive order, the task force guidance, or the naval contract, but because of a different policy: "ARTNOTE 2022-1 Revision 3, dated May 1, 2022."  (ECF No. 12, at 10). Defendant began to "follow[]" that policy in May 2022—at a time when the executive order had been enjoined for months and remained so.  (ECF No. 12, at 9).  Shortly before their terminations, Plaintiffs were told that if they continued to refuse vaccination, they would be fired for a "failure to comply with ARTNOTE 2022-1 Revision 3, dated May 1, 2022."  (ECF No. 12, at 9-10).  Thus, it appears that Plaintiffs were fired because they violated this so-called "ARTNOTE" policy.  (ECF No. 12, at 10).

The amended complaint, however, provides almost no further information about that policy.  It does not, for example, explain who drafted and issued the policy—whether it was Defendant, the federal government, or both entities working together.  It does

not explain who enforced the policy.  It does not explain whether the policy allowed religious accommodations, or which entity decided whether an employee would be accommodated.  Plaintiffs do allege, however, that when the "ARTNOTE" policy took effect, "there was no sign that the executive branch would require implementation of the vaccination requirement." (ECF No. 12, at 9).  As Defendant notes, that allegation suggests that it was Defendant—"not the United States government"—that "made the decision to deny Plaintiffs' accommodation requests and to terminate Plaintiffs' employment."  (ECF No. 16-2, at 9-10).[4]

Finally, at the end of their response to the motion to dismiss, Plaintiffs also appear to argue that the executive order did not apply to Defendant's contract with the Navy, and thus that Defendant should not have adopted a vaccination requirement at all.  (ECF No. 22, at 10-11).  They assert that the executive order applied only to four discrete categories of contracts, and that Defendant's contract with the Navy did not fit any of those categories.  (ECF No. 22, at 10).  Rather, Plaintiffs assert that Defendant incorrectly went beyond the order's requirements and

---

[4] When summarizing the facts alleged in the amended complaint, Defendant cites the "ARNOTE" allegations and states that, "[o]n May 1, 2022, [Defendant] issued a memorandum requiring certain employees, including Plaintiffs, to be COVID-19 vaccinated." (ECF No. 16-2, at 6 (citing ECF No. 12, at 9-10)).  Thus, Defendant seems to understand those allegations to reference a policy issued by Defendant, not the federal government.

agreed to "modif[y]" the contract to "include the EO 14042 language" and add "an award of $2.7 million." (ECF No. 22, at 10-11). Plaintiffs then claim that "but for the fear that Defendant would have to return the $2.7 million[,] [Plaintiffs] would not have been fired." (ECF No. 22, at 11).

This argument aligns with the statement made in the amended complaint that Defendant "overzealous[ly] implement[ed]" the executive order. (ECF No. 12, at 3). Plaintiffs do not, however, explain how this argument fits into their RFRA claim. As Defendant notes, the assertion that Defendant "went beyond what the government required" actually undercuts Plaintiffs' position because it suggests that Defendant—not the government—"was responsible for the decisions at issue in the case." (ECF Nos. 16-2, at 12-13). If Plaintiffs mean to argue that the government used a $2.7 million contract modification to coerce Defendant into firing unvaccinated employees, that argument rests on facts not alleged. The amended complaint says nothing about a $2.7 million modification to a contract. Nor does it allege that Defendant refused religious accommodations because it feared it would have to "return the $2.7 million." It likewise provides no allegations to make it plausible that the government sought to coerce private contractors into denying religious accommodations; indeed, the task force guidance states that religious accommodations may be required.

All told, the amended complaint provides no explanation for the government's involvement in the policy under which Plaintiffs actually were fired.  Thus, Plaintiffs have failed to allege facts sufficient to make it plausible that their firings were attributable to government action.  Because such a showing, at a minimum, is required for their RFRA claim to survive, that claim will be dismissed.

**IV.  Conclusion**

For the foregoing reasons, Defendant's partial motion to dismiss will be granted and Count I of the amended complaint will be dismissed.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
