IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                   |   |
|-----------------------------------|---|
| DUSTIN JOSEPH DAVIS, et al.       | : |
|                                   | : |
| v.                                | : Civil Action No. DKC 22-1760 |
|                                   | : |
| RELIANCE TEST & TECHNOLOGY, LLC   | : |
|                                   | : |

**MEMORANDUM OPINION**

This is an employment case involving a religious exemption request from a COVID vaccine requirement brought by Plaintiffs Dustin Davis, Buddy McBride, Stephen Gatton, and Shane Washington ("Plaintiffs"), against their former employer, Defendant Reliance Test & Technology, LLC ("RT&T" or "Defendant"). Defendant has moved for summary judgment on the remaining claim under Title VII, 42 U.S.C. § 2000e, *et seq.* (ECF No. 63). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

## I. Background[1]

### A. The Federal Contractor Vaccine Mandate

In September 2021, President Biden issued Executive Order 14042, titled "Ensuring Adequate COVID Safety Protocols for Federal Contractors." Exec. Order No. 14042, 86 Fed. Reg. 50,985

---

[1] Unless otherwise noted, the following facts are undisputed.

(Sept. 9, 2021).[2]  The order instructed federal agencies to "ensure" "to the extent permitted by law" that each contract with a federal contractor would "include a clause" requiring the contractor to "comply with all guidance . . . published by the Safer Federal Workforce Task Force," "provided that the Director of the Office of Management and Budget . . . approves the Task Force Guidance."  *Id.*

Soon after, the task force issued its first guidance document. *See* Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Sept. 24, 2021), https://perma.cc/F5LV-F7EA.  The guidance stated that federal contractors "must ensure that all covered contractor employees are fully vaccinated for COVID-19, unless the employee is legally entitled to an accommodation." *Id.* at 5.  The guidance explained that a contractor "may be required to provide an accommodation" to employees who decline vaccination "because of a disability" or "because of a sincerely held religious belief, practice, or observance."  *Id.* at 5.  Contractors thus "should review and consider what, if any, accommodation[s] [they] must offer."  *Id.* at 5.

---

[2] Each executive branch document discussed in this section is publicly available and was cited in the amended complaint (ECF No. 12), and Defendant's motion for summary judgment.  (ECF No. 63).

On November 10, 2021, the task force issued an updated guidance document. *See* Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Nov. 10, 2021), https://perma.cc/BSW7-7XHU. The updated guidance pushed back the vaccination deadline from December 8, 2021, to January 18, 2022. *Id.* at 5.

On December 7, 2021, a federal court enjoined Executive Order 14042 and barred the government from "enforcing the vaccine mandate for federal contractors . . . in any state or territory of the United States of America." *Georgia v. Biden*, 574 F.Supp.3d 1337, 1357 (S.D.Ga. 2021). That nationwide injunction remained in effect for almost one year, until the United States Court of Appeals for the Eleventh Circuit narrowed the injunction so that it only applied to the plaintiffs involved in that particular case. *See Georgia v. President of the United States*, 46 F.4th 1283, 1308 (11th Cir. 2022).

**B. Case Background**

Defendant is a government contractor. In September 2020, the United States Navy contracted with Defendant to perform "Atlantic Range Technical Support Services (ARTSS) for the Naval Air Warfare Center Aircraft Division." (ECF No. 63-1, at 7). "ARTSS supports Atlantic Test Ranges (ATR) and Atlantic Targets and Marine Operations (ATMO) in research and development, engineering, maintenance, operation, support of facilities, systems, and

equipment." (ECF No. 63-1, at 7-8). Defendant employed Plaintiffs as engineering technicians, and Plaintiffs performed work on Defendant's ATMO contract with the Navy. Plaintiffs had to be on-site to perform their jobs, and they often had to travel on ships on missions that lasted over twenty-four hours. While on these missions, Plaintiffs worked in close confines with other employees of Defendant, as well as government employees. (ECF No. 63-1, at 10).

On October 19, 2021, Defendant emailed its employees to inform them that the federal government was requiring federal contractors to be vaccinated against COVID-19. On October 27, 2021, Defendant issued its own COVID-19 vaccination policy, requiring all employees to be vaccinated against COVID-19. The policy stated that if an employee had a medical condition or sincere religious belief that precluded vaccination, he or she could seek an exemption. (ECF No. 63-1, at 11-13).

Plaintiffs opposed receiving the vaccine for religious reasons. Out of the four Plaintiffs, only Mr. Washington submitted a formal exemption request. (ECF Nos. 63-1, at 19, 21-25; 63-10). The other three Plaintiffs—Mr. Davis, Mr. McBride, and Mr. Gatton—did not formally request an accommodation. They contend that their supervisor informed them that any religious accommodation requests would be denied, and requesting an accommodation would be a "waste of paper." (ECF No. 65-1, at 13). Each Plaintiff testified in

4

his deposition that he opposed the COVID-19 vaccine.  Mr. Davis testified he is Catholic, he believes his body is the "temple of the Holy Spirit," and he does not want to "defile" his body with a vaccine.  (ECF No. 63-4, at 6, 8).  Mr. McBride also testified he is Catholic, he believes it is against his "religious free will" to receive a vaccine, and he does not want to "defile" his body with a vaccine.  (ECF No. 63-5, at 4, 6).  Additionally, Mr. Gatton testified that he is Christian.  He stated he did not want to receive the COVID-19 vaccine because he had health issues.  Mr. Gatton heard, however, "it would be nearly impossible to get a medical exemption," and he decided to try to receive a religious exemption.  (ECF No. 63-6, at 3).

Mr. Washington's accommodation request stated:

I am a baptized Catholic Christian seeking an exemption from an immunization requirement.

Christianity as truly taught by any denomination including the Catholic Church teaches that a person may be required to refuse medical intervention, including a vaccination, if my informed conscience comes to this judgement.  The following religious teachings and my personal religious beliefs endowed by God afford me the freedom to: 1) determine if a vaccination is not morally/ethically necessary in principle, and so must be voluntary, 2) refuse the use of medical products including certain vaccines and gene therapy, that are produced using human cell lines derived from direct abortions, 3) make informed [judgments] about the proportionality (of law) of medical interventions that are to be respected unless they contradict a Christian moral teaching, 4) refuse to permanently altering my God given DNA as part of a human experiment, 5) morally obey my conscience.

> There is no authoritative Christian teaching in
> Catholicism to receive any vaccine. Therapeutic
> proportionality and proportionality of law within my
> strongly held belief system assesses whether the
> benefits of a medical treatment would outweigh the
> undesirable known side-effects and burdens in light of
> my well-being; spiritual, physiological and
> psychological. These life changing moral and spiritual
> decisions are not reducible to coerced public health
> experiments. Christ in me chooses what I know to be
> just and right. Through Christ, I am obliged to stand
> with my judgement of conscience on his behalf and my
> own.

(ECF No. 63-10, at 1). On December 9, 2021, Mr. Washington's

accommodation request was granted, subject to change based on

requirements for his work location. (ECF No. 63-1, at 13-14).

On December 16, 2021, following the nationwide injunction,

Defendant emailed all its employees to inform them that the task

force guidance vaccine deadline of January 18, 2022, was being

pushed to "an unknown date." (ECF No. 63-1, at 15).

On May 1, 2022, the Department of Defense issued a memorandum

that required all ATMO crew and mission support members for

missions at sea longer than twenty-four hours to be fully

vaccinated. Because Plaintiffs were all ATMO mission and crew

support members for missions that sometimes took place for more

than twenty-four hours, Plaintiffs were required to be vaccinated

by May 27, 2022. (ECF No. 63-1, at 16).

As a government contractor, Defendant received Surveillance

Activity Checklists ("SAC Reports"). A SAC Report is a "government

developed and applied document used to make sure systematic quality

assurance methods are used in the administration of the LOE [Level of Effort] based service order . . . to provide performance feedback to a contractor and the COR [the government's Contracting Officer Representative]." (ECF No. 63-15, at 1). On May 3, 2022, the government gave Defendant a "marginal rating" on the adequate staffing section of a SAC Report. The government evaluator stated that Defendant's "workforce is down by four personnel due to vaccination status. This reduces the ability to utilize these four individuals for any [Travel Duty] events which is the core of ATMO mission support. This also impacts morale with the contractor personnel that are required to travel for mission support." (ECF No. 63-15, at 2).

On May 23, 2022, Defendant sent each Plaintiff a letter reiterating the vaccination requirement and warning him that if he failed to provide proof of vaccination by May 27, 2022, he would be terminated effective May 30, 2022. (ECF Nos. 63-1, at 18-19; 63-16; 63-17; 63-18; 63-19). On May 26, 2022, each Plaintiff received a letter informing him that, because he had not complied with the vaccine requirement, he would be terminated effective May 30, 2022. (ECF Nos. 63-1; 63-20; 63-21; 63-22; 63-23).

In response to their terminations, Plaintiffs filed charges against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Each Plaintiff received a right to sue notice. (ECF Nos. 9-2; 9-3; 9-4; 9-5).

Plaintiffs filed this action on July 19, 2022. (ECF No. 1). The original complaint raised only a claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. (ECF No. 1, at 11-13). Defendant moved to dismiss, (ECF No. 5), and Plaintiffs moved for leave to amend the complaint. (ECF No. 9). The court granted Plaintiffs' motion and denied Defendant's motion to dismiss as moot. (ECF No. 11). Plaintiffs filed an amended complaint that maintained the RFRA claim and added a claim under Title VII, 42 U.S.C. § 2000e, *et seq*. (ECF No. 12, at 11-15). Plaintiffs assert federal question jurisdiction and jurisdiction under 28 U.S.C. § 1343. (ECF No. 12, at 2). Defendant filed a partial motion to dismiss the RFRA claim for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (ECF No. 16), which the court granted. (ECF No. 26). On August 25, 2023, Plaintiffs filed a motion for judgment on the pleadings (ECF No. 30), and on January 8, 2024, the court denied the motion. (ECF No. 43). On May 17, 2024, Defendant filed a motion for summary judgment. (ECF No. 63). On June 17, 2024, Plaintiffs filed a response in opposition to Defendant's motion for summary judgment (ECF No. 65), and on July 1, 2024, Defendant filed a reply in support of its motion for summary judgment. (ECF No. 66).

## II.  Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is

entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

Defendant attaches several exhibits to its motion. Apart from Defendant's deposition of Plaintiffs and an affidavit from Defendant's general operations manager, the Defendant does not include a declaration or affidavit authenticating their exhibits. The court may still consider the exhibits, however, because "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, No. 21-cv-1818-DKC, 2024 WL 895122, at *8 (D.Md. Mar. 1, 2024) (quoting *Wake v. Nat'l R.R. Passenger, Corp.*, No. 12-cv-1510-PWG, 2013 WL 5423978, at *1 (D.Md. Sept. 26, 2013)), *reconsideration denied*, No. 21-cv-1818-DKC, 2024 WL 1513522 (D.Md. Apr. 8, 2024).

Defendant would be able to provide admissible versions of its documents at trial. The authors of the letters and emails between Defendant and Plaintiffs (ECF Nos. 63-8; 63-10; 63-11; 63-12; 63-13; 63-16; 63-17; 63-18; 63-19; 63-20; 63-21; 63-22; 63-22), would be able to authenticate the documents by testifying as to their personal knowledge of writing the letters and messages. Fed.R.Evid. 901(b)(1). Defendant's vaccination policies and the government's SAC reports and memoranda (ECF Nos. 63-9; 63-14; 63-15; 63-24) could "be admissible if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business." *Nordman*, 2024 WL 895122, at *9 (quoting *Jones v. W. Tidewater Reg'l Jail*, 187 F.Supp.3d 648, 654 (E.D.Va. 2016)).

## III. Analysis

Plaintiffs assert a claim under Title VII, 42 U.S.C. § 2000e, *et seq.* for religious discrimination. (ECF No. 12, at 14-15). In its motion for summary judgment, Defendant asserts there is no genuine dispute of material fact, and Defendant is entitled to summary judgment because Plaintiffs fail to establish a prima facie case. Defendant argues that even if Plaintiffs can make a prima facie case, accommodating Plaintiffs would be an undue hardship. (ECF No. 63-1, at 27). Plaintiffs' opposition does not dispute

Defendant's statement of undisputed facts;[3] nevertheless, Plaintiffs contend that they established a prima facie case, and Defendant failed to establish an undue hardship. (ECF No. 65).

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, 8 because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Under Title VII, religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e-2(j).

**A. Prima Facie Case**

In order to present a prima facie case of religious discrimination, a plaintiff must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief;

---

[3] Plaintiffs assert that there are disputes of several facts because Defendant originally denied those facts in its answer and now concedes them in its motion for summary judgment. (ECF No. 65, at 8). This does not create disputed facts for purposes of this motion.

[and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)).  A burden shifting scheme akin to the one articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), can be used in religious accommodation cases.  *Id.*

Defendant argues that none of the Plaintiffs have shown a sincerely held religious belief, and that claiming that the "body is a temple" is not enough to establish religious belief.  It further contends that Plaintiffs' other life choices are inconsistent with their professed religious beliefs.  Defendant also points to Mr. Gatton's statement that he had medical objections to the vaccine.  (ECF No. 63-1, at 27-38).  Additionally, Defendant argues that Mr. Davis, Mr. McBride, and Mr. Gatton cannot establish they informed Defendant of their beliefs because they did not submit religious accommodation requests.  (ECF No. 63-1, at 38-39).

As discussed above, Plaintiffs do not dispute any of Defendant's facts.  Instead, Plaintiffs argue that Mr. Davis, Mr. McBride, and Mr. Gatton did not submit accommodation requests because their supervisor informed them that they were not granting any religious accommodation requests, and requesting an

12

accommodation would be a "waste of paper." (ECF Nos. 63-5, at 3; 65-1, at 13). Additionally, Plaintiffs argue that their religious beliefs are sincerely held, and that Mr. Gatton had both medical and religious objections to the vaccine. (ECF No. 65-1, at 15-16).

In a recent Title VII failure to accommodate case, the Fourth Circuit clarified that under the first element, "a plaintiff must show her professed belief is (1) sincerely held and (2) religious in nature." *Barnett v. Inova Health Care Servs.*, No. 24-1271, 2025 WL 37237, at *3 (4th Cir. Jan. 7, 2025) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). Expounding on the two prongs, the Fourth Circuit wrote:

> The first prong, sincerity, "seeks to determine an adherent's good faith in the expression of [her] religious belief" and "provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). The second prong, religious in nature, "limit[s] the factfinder's inquiry to a determination whether 'the beliefs professed ... are, in the claimant's own scheme of things, religious[.]'" *Id.* at 157-58 (referencing *Seeger*, 380 U.S. at 185, 85 S.Ct. 850). Therefore, "it follows ... that the claim of the adherent 'that [her] belief is an essential part of a religious faith must be given great weight.'" *Id.*

*Barnett*, 2025 WL 37237, at *3. Finding that the district court erred in dismissing the plaintiff's failure to accommodate claim, the Fourth Circuit noted that "the inquiry into sincerity is 'almost exclusively a credibility assessment' and 'can rarely be

13

determined on summary judgment, let alone a motion to dismiss.'" *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007)).

### 1. Bona Fide Religious Belief

Mr. Davis testified that as a Catholic, he believes his body is a "temple of the Holy Spirit," and he does not want to "defile" his body with a vaccine. (ECF No. 63-4, at 6, 8). Mr. McBride testified that he is also a Catholic, and he believes it is against his "religious free will" to receive a vaccine, and he does not want to "defile" his body with a vaccine. (ECF No. 63-5, at 4, 6). Plaintiffs contend that Mr. Gatton has both medical and religious objections to the vaccine. (ECF No. 65, at 16). Mr. Washington wrote on his accommodation request that he is a "baptized Catholic Christian," and among other things, he must "refuse the use of medical products including certain vaccines and gene therapy, that are produced using human cell lines derived from direct abortions." (ECF No. 63-10, at 1).

In light of the recent Fourth Circuit case, Plaintiffs have put forth sufficient evidence that their "professed belief[s]" are "sincerely held" and "religious in nature." *Barnett*, 2025 WL 37237, at *3.

### 2. Informing Employer of Belief

Additionally, Mr. Washington did submit an accommodation request to inform Defendant of his belief. (ECF No. 63-10). Mr. Davis, Mr. McBride, and Mr. Gatton contend that a supervisor told

14

them that any religious accommodation requests would be denied and requesting an accommodation would be a "waste of paper."    (ECF No. 65-1, at 13).  Defendant cannot tell Plaintiffs not to request accommodations, and then fault them for not requesting accommodations.

### B. Undue Hardship

"If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Firestone Fibers & Textiles Co.*, 515 F.3d at 312 (quoting *Chalmers*, 101 F.3d at 1019).  "Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment." *Dean v. Acts Ret. Life Communities*, No. 23-cv-1221-GLR, 2024 WL 964218, at *6 (D.Md. Mar. 6, 2024) (citing *Groff v. DeJoy*, 600 U.S. 447, 468 (2023)).

Defendant argues that there is no dispute that accommodating Plaintiffs' vaccination exemption requests would be an undue hardship for Defendant.  It points out that there is no dispute that it is a government contractor and must comply with the government's policies or potentially risk losing the contract. Additionally, it contends that there is no dispute that on May 1, 2022, the government required "all ATMO crew and mission support for underway events greater than 24 hours" to be vaccinated by May 27, 2022.  Because Plaintiffs were engineer technicians under the

ATMO contract, a primary part of their jobs was to support these missions that lasted over 24 hours. Defendant also contends that it paid Plaintiffs their full salaries for the months Plaintiffs were unable to perform a large part of their jobs when they were restricted from traveling due to their refusal to be vaccinated. (ECF No. 63-1, at 41-42).

Additionally, Defendant received a marginal rating for failing to have adequate staff. Defendant asserts that this shortage was because of Plaintiffs' refusal to receive the vaccine. Defendant also argues that it would have been an undue burden to allow Plaintiffs to remain unvaccinated because Plaintiffs' jobs needed to be performed in person. Lastly, Defendant contends that allowing Plaintiffs to work unvaccinated would have been an undue hardship because it would create a safety risk to Defendant's other employees, as well as federal employees. (ECF No. 63-1, at 42-45).

In their opposition, Plaintiffs do not dispute any of Defendant's arguments or underlying facts. Instead, Plaintiffs argue that Defendant has not shown an undue hardship because "Defendant did not engage in this fact-based assessment when [Defendant] failed to provide or engage Plaintiff[]s' bona fide accommodation process" and "Defendant did not consider whether an alternative accommodation could be provided, such as a job search." (ECF No. 65, at 17). Plaintiffs then cite to two depositions,

16

"Aldridge Dep." and "Abell Dep.," but neither party provided these depositions. Plaintiffs argue that "[a] question of fact and law remains whether even switching shifts, as Aldridge described, would have sufficed as a 'corrective action' and not impose a substantial cost on Defendant's business." (ECF No. 65, at 17). Plaintiffs also argue that Mr. Washington was at one point granted an exemption and allowed to wear a mask and social distance. Further, Plaintiffs argue that "Dale Abell, branch head for the government agency Defendant supported, had discussions that Plaintiffs did not have to lose their jobs." Plaintiffs contend that "Mr. Abell testified that there were options to place Plaintiffs in positions that did not require travel." (ECF No. 65, at 18).

Title VII does not define the term "undue hardship." In *Groff*, a recent case from the Supreme Court of the United States, the Court held that undue hardship is more than the "more than de minimis standard" that courts previously applied. 600 U.S. 447, 464 (2023). Instead, the Court held that to show undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83, n.14 (1977), *holding modified by Groff*, 600 U.S. at 447).

The Court explained that "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff*, 600 U.S. at 471-72 (internal quotations omitted). Additionally, a court should assess the impact of the potential accommodation on coworkers, if that impact "affect[s] the conduct of the business." *Id.* at 472 (internal quotations omitted).

Defendant has proven that accommodating Plaintiffs' vaccination exemptions could have risked Defendant's contract with the government, Plaintiffs were unable to perform their jobs fully while unvaccinated, and they posed a health risk to Defendant's other employees and government employees. This constitutes a "substantial increased costs in relation to the conduct of its particular business," and also shows the impact of the potential accommodation on Plaintiffs' coworkers.

### C. Interactive Process

Plaintiffs have not disputed these facts, nor have they put forth their own facts showing Defendant could have accommodated them without undue hardship. Instead, Plaintiffs seems to argue that Defendant did not engage in an appropriate interactive process in considering Plaintiffs' accommodation requests. It is far from

clear that an interactive process is required in the Title VII context.

An interactive process is required under the Americans with Disabilities Act ("ADA"), and case law has developed clarifying the requirements of the interactive process. *See, e.g.*, 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346-47 (4th Cir. 2013) (citations omitted) ("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability.").[4]

Plaintiffs do not cite to any cases or other authorities to support their argument that Title VII requires an interactive process. The relevant regulation does not discuss an interactive process. 29 C.F.R. § 1605.2. Additionally, a recent opinion from the United States Court of Appeals for the Sixth Circuit addressed this issue and found that while the ADA does require an interactive

---

[4] Defendant points out that, in the ADA context, an employee must show more than a failure to engage in the interactive process. In addition, the employee must show that the failure to do so resulted in the failure to identify an appropriate accommodation. ECF No. 66, at 5, n.2 (*citing Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 F.App'x 314, 333 (4th Cir. 2011).

process, "Title VII's regulations contain no similar reference to an interactive process." *Kizer v. St. Jude Children's Rsch. Hosp.*, No. 24-5207, 2024 WL 4816856, at *3 (6th Cir. Nov. 18, 2024). In *Kizer*, a hospital employee requested a religious exemption from receiving the COVID-19 vaccine, and the hospital refused, ultimately terminating the employee. *Id.* at *1. The Sixth Circuit affirmed the district court's grant of summary judgment in favor of the hospital, finding that the hospital employer showed undue hardship. *Id.* The appellate court found that there was no interactive process requirement, and the hospital had shown a "thorough information-gathering process with input from [the employee] herself." The hospital gathered information from the employee through her request form. Additionally, the hospital provided evidence regarding the risk of COVID-19 to its patients. The hospital also provided evidence that it had gathered information about the employee's "essential duties and whether her job could be performed remotely." *Id.* at *3-4. In *Kizer*, the court concluded:

> We thus cannot say that, as a matter of law, [Defendant] violated an implicit interactive-process duty under Title VII (as yet unrecognized in this circuit). [Defendant] has presented evidence of a thorough information-gathering process with input from Kizer herself. And the EEOC is clear that Title VII contains no such hard and fast requirement of an interactive process.

*Id.* at *5.

Similarly, Defendant gathered information from Mr. Washington through his accommodation request form.  Defendant also provided evidence of the risk of COVID-19 to its employees and other federal employees.  Lastly, Defendant determined that Plaintiffs could not perform their essential duties remotely.

Plaintiffs suggest that Defendant should have allowed them to perform another job, but provide no evidence that that was possible, that switching them to other positions was viable, or that it would not have been unfair to other employees.  Plaintiffs refer to, but have not provided, Mr. Aldridge's or Mr. Abell's depositions to support this argument.  Even accepting Mr. Aldridge's statement that "switching shifts" "would have sufficed as a 'corrective action' and not impose a substantial cost on Defendant's business," the statement is too vague and conclusory to create a genuine dispute of material fact.  Additionally, Plaintiffs do not explain how Mr. Abell, a government employee, would have knowledge as to what positions Defendant had available.

Under these facts and circumstances, Defendant has shown undue hardship, and Plaintiffs have not provided any facts to dispute that allowing Plaintiffs to remain unvaccinated would have been an undue hardship for Defendant or that it failed to adhere to any interactive process requirement.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate order will follow.

                                            /s/
                                DEBORAH K. CHASANOW
                                United States District Judge